Scott E. Davis
State Bar No. 16160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 11524
SCOTT M. HARRIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 252-7400
Facsimile:   (602) 569-9720
email: harris@smharrislaw.com

*Attorneys for Plaintiff Ramina Johal*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| | Case No. |
| Ramina Johal, | **COMPLAINT** |
| Plaintiff, | |
| v. | |
| The United States Life Insurance Company in the City of New York; American General Life Insurance Company; National Union Fire Insurance Company of Pittsburgh, PA.; American International Group, Inc.; AIG Benefit Solutions; International Rescue Committee; International Rescue Committee Group Long-Term Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Ramina Johal (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.     At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.     Upon information and belief, International Rescue Committee, a New York corporation (hereinafter referred to as the "Company"), sponsored, administered and purchased a group long-term disability insurance Policy (hereinafter referred to as the "Policy") whereby the Policy states that it was issued to the Company by the following companies and is fully insured by them: The United States Life Insurance Company in the City of New York (hereinafter referred to as "U.S. Life"), American General Life Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pa.

4.     Upon information and belief, U.S. Life is financially responsible for paying benefits according to the Policy (*See* Exhibit "A," page 1).

5.     The specific U.S. Life group long-term disability ("LTD") insurance Policy is known as Group Policy No. G-255935 (the Policy is attached hereto as Exhibit "A").

6.     U.S. Life functioned as the sole claim administrator according to the Policy and made all claims decisions in Plaintiff's claim.

7.      Pursuant to the relevant ERISA regulation, the Company, and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in U.S. Life.

8.      The Company's purpose in purchasing the Policy was to provide disability insurance and income protection for its employees such as the Plaintiff.

9.      Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the International Rescue Committee Group Long-Term Disability Plan (hereinafter referred to as the "Plan"), which may have been created to provide the Company's employees with welfare benefits.

10.      At all times relevant hereto, the Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

11.      In administering Plaintiff's claim, U.S. Life operated under dual and conflicting roles as the sole decision maker with regard to whether Plaintiff was disabled and entitled to benefits, and also the payor of benefits if it found she was disabled.

12.      U.S. Life operated under a structural financial conflict of interest because it fully insured the Policy and made every decision regarding whether Plaintiff was disabled in her LTD claim.

13.      U.S. Life's structural financial conflict of interest existed and manifested because if it found Plaintiff was disabled, it was then financially liable to pay her LTD benefits potentially for the maximum timeframe set forth in the Policy.

14.      Upon information and belief, AIG Benefit Solutions is the marketing name for the domestic benefits division of American International Group, Inc.

15.      Upon information and belief, U.S. Life is a subsidiary and/or affiliate of American International Group, Inc.

16.      Upon information and belief, American General Life Insurance Company is a subsidiary and/or affiliate of American International Group, Inc.

17.     Upon information and belief, National Union Fire Insurance Company of Pittsburgh, PA is a subsidiary and/or affiliate of American International Group, Inc.

18.     The Company, U.S. Life and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### Venue

19.     Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

### General Allegations

20.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy, and a "participant" as defined by 29 U.S.C. § 1002(7).

21.     Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits from the Plan and the relevant Policy pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, from any other Company Plan, and/or from the Company itself as a result of being found disabled in this action.

22.     Plaintiff also seeks a determination that she is disabled and meets the "Any Gainful Occupation" definition of disability set forth in the Plan and/or Policy as the evidence she submitted to U.S. Life supports a determination by the Court that she also meets the Plan and/or Policy's "Any Gainful Occupation" definition of disability and she is entitled to those benefits at this time.

23.     Plaintiff alleges the issue of whether she also meets the "Any Gainful Occupation" definition of disability in the Plan and/or Policy is ripe before the Court since the "Regular Occupation" definition of disability timeframe (twenty-four (24) months after she is first entitled to benefits) in the Plan and/or Policy expired on or about January 4, 2020.

24.     On or about January 4, 2020, or soon thereafter, Plaintiff's LTD claim entered into the "Any Gainful Occupation" definition of disability meaning that after that date, Plaintiff must prove she meets the Policy's "Any Gainful Occupation" definition of disability.

25.     All of Plaintiff's evidence proves that she also meets the "Any Gainful Occupation" definition of disability in the Policy.

26.     After working for the Company as a loyal employee in the occupation of an Information and Resource Coordinator, on or about October 6, 2017, Plaintiff became disabled from working in that occupation, and also disabled from working in any occupation due to disabling medical conditions.

27.     Due to her disabling medical conditions, Plaintiff has remained continuously disabled and unable to work in any occupation since October 6, 2017.

28.     Following the onset of her disability, Plaintiff filed a claim for short-term disability ("STD") benefits which was administered, reviewed and approved by U.S. Life.

29.     After reviewing Plaintiff's STD claim and the evidence supporting it, U.S. Life approved her claim after concluding that she met the STD Policy's definition of disability (attached hereto as Exhibit "B").

30.     U.S. Life approved Plaintiff's STD claim and found that she was disabled as is set forth in the STD Policy for the maximum duration of the time STD benefits could be paid, which was approximately ninety (90) days after the day she became disabled.

31.     Plaintiff's STD benefits have been fully paid by U.S. Life and exhausted.

32.     Following the exhaustion of her STD claim/benefits, Plaintiff then filed a claim for LTD benefits under the relevant Policy with U.S. Life.

33.     As referenced, U.S. Life made every decision in Plaintiff's LTD claim regarding whether she was disabled and eligible for benefits pursuant to the terms of the relevant Policy.

34.     Upon information and belief, the relevant U.S. Life LTD Policy's definition of disability governing Plaintiff's LTD claim is as follows:

> "Disability or Disabled means the Company has determined that a change in your functional capacity to work as a result of your sickness or injury began while you are covered under the group policy and that:
>
> - You are unable to perform all the material and substantial duties of your regular occupation due to your sickness or injury; and
> - You have a 20% or more loss in indexed monthly earnings due to the same sickness or injury.
>
> If you are disabled during the elimination period and the next 24 months, you will continue to receive payments beyond 24 months of disability, if you are also:
>
> - Working in any occupation and continue to have a 40% or more loss in your indexed monthly earnings due to your sickness or injury; or
> - Not working and due to the same sickness or injury, are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience."

35.     Plaintiff was ***not represented*** throughout the entirety of U.S. Life's administrative review of her LTD claim.

36.     In support of her claim for LTD benefits, Plaintiff submitted to U.S. Life medical and other evidence which supported her allegation that she met the "Regular Occupation" definition of disability as defined in the Policy.

37.     In support of her LTD claim, Plaintiff submitted to U.S. Life a June 14, 2018 medical questionnaire completed by her board-certified treating family medicine physician who marked "no" when asked whether she believed Plaintiff "…is able to return to work on a full-time basis."

38.     U.S. Life initially found Plaintiff *was disabled* as defined in its Policy and approved her LTD claim.

39.    U.S. Life found Plaintiff *was disabled* and entitled to LTD benefits from January 4, 2018 through August 7, 2018 (for approximately seven (7) months).

40.    As part of a review of Plaintiff's claim for LTD benefits, U.S. Life then required her to undergo an examination with a physician that its third-party vendor chose, named Brian McCrary, D.O.

41.    Brian McCrary, D.O. was retained by U.S. Life through its third-party vendor named D&D Medical Associates, PC.

42.    Dr. McCrary is repeatedly retained by disability insurance companies and their their-party vendors, to perform examinations of individuals who are seeking disability benefits such as occurred with Plaintiff in her claim.

43.    U.S. Life and its third-party vendor, D&D Medical Associates, PC's retention of a biased and conflicted Dr. McCrary to perform Plaintiff's examination, violates its ERISA fiduciary duty (*See* 29 U.S.C. § 1104(a)), which requires it to administer the claim ***"solely"*** in Plaintiff's best interests.

44.    U.S. Life and D&D Medical Associates, PC's retention of a biased and conflicted Dr. McCrary to perform the examination, is not consistent with its ERISA fiduciary to her, and not consistent with administering the claim ***"solely"*** in her best interests.

45.    U.S. Life had a non-delegable ***duty*** pursuant to ERISA and Ninth Circuit law (*See Abatie v. Alta Health Life Ins. Co,* 458 F.3d 955, 968 (9th Cir. 2006))((It is an abuse of discretion for an administrator to inadequately investigate a claim), to investigate its business relationship with Dr. McCrary and make certain that he was truly "independent" before it approved his examination of Plaintiff and/or his involvement in her claim.

46.    U.S. Life had a non-delegable ***duty*** pursuant to ERISA and Ninth Circuit law (*See Abatie)* to investigate Dr. McCrary's business relationship with its third-party vendor, D&D Medical Associates, PC.,  who it hired to arrange for the examination.

47.     Before Plaintiff attended the examination with Dr. McCrary, U.S. Life failed to perform any investigation of Dr. McCrary's business conflicts of interest and bias in order to make certain that he was truly "independent" as it informed Plaintiff he was.

48.     Dr. McCrary spent a total of **_20 minutes_** with Plaintiff, which includes the time he spent examining her.

49.     Dr. McCrary's actual "physical examination" of Plaintiff lasted a total of **_five (5) minutes._**

50.     In a report dated July 25, 2018, following his superficial examination of the Plaintiff, in spite of evidence supporting her claim, Dr. McCrary was able to discern and opine that as it related to Plaintiff's work status, "…no restrictions are medically necessary."

51.     In retaining Dr. McCrary to perform the examination, U.S. Life violated ERISA, specifically 29 C.F.R. § 2560.503-1(h)(3), because he was not medically qualified to evaluate her disabling medical conditions.

52.     Pursuant to 29 C.F.R. § 2560.503-1(h)(3), Dr. McCrary did not possess the medical training and credentials to evaluate and opine on Plaintiff's disabling medical conditions, or the work restrictions and limitations she experienced or which were required due to her disabling medical conditions.

53.     Upon information and belief, Plaintiff alleges that due to Dr. McCrary's extensive business relationship with the disability insurance industry, he may be earning a significant annual income from it performing the type of examinations he did in Plaintiff's claim and then rendering biased opinions which favor the insurance company.

54.     Upon information and belief, for the reasons referenced herein, due to his long-time, extensive relationship(s) with U.S. Life, D&D Medical Associates, PC and/or the disability insurance industry, Dr. McCrary is biased and operated under his own conflicts of interests (i.e. to protect his consulting and business relationships with industry retained third-party vendors who in turn retain him).

55.     Upon information and belief, Dr. McCrary's desire to protect his income and his relationships referenced herein, was a motivating factor in why he opined that Plaintiff's medical conditions did not require any work limitations and that she is able to work.

56.     Upon information and belief, Dr. McCrary is and has been for many years, frequently retained by the disability insurance industry and third-party vendors to perform what he, and the requesting insurance company such as U.S. Life, alleges are "independent" medical examinations.

57.     Dr. McCrary's bias in favor of insurance companies, and specifically in favor of U.S. Life in Plaintiff's claim, led him to perform a superficial, biased, and outcome-based examination with the end result being his opinion favoring U.S. Life, and which was also very adverse to Plaintiff and her LTD claim.

58.     Dr. McCrary's opinion that Plaintiff did not require work limitations (i.e. she was not disabled) is the product of his 5 minute physical examination, as well as his selective, one sided, biased review of Plaintiff's medical and other evidence, which included her as well as her treating medical professionals' credible allegations/opinions that she was disabled and unable to work.

59.     In his report, Dr. McCrary deliberately and blatantly de-emphasized, selectively reviewed, and impermissibly looked only for certain types of evidence to supported his biased opinions, while concurrently rejecting and failing to credit any of Plaintiff's reliable and credible evidence which U.S. Life *already reviewed* and found so persuasive in her LTD claim that it determined she was, and had been disabled from working in her occupation for the prior seven (7) months.

60.     Upon information and belief, due to his conflicts of interest, Dr. McCrary is motivated to protect his own consulting relationships with U.S. Life, D&D Medical Associates, PC and/or the disability insurance industry by providing biased, one sided, medical examination opinions and reports which favor U.S. Life and other disability

insurance companies, as exemplified in the adverse opinions he rendered in Plaintiff's claim that was contradicted by all of her evidence - which included U.S. Life's prior finding that she was disabled.

61.    U.S. Life used Dr. McCrary's opinions as the basis for its unlawful, illogical and unreasonable decision to terminate Plaintiff's LTD claim and her disability benefits.

62.    U.S. Life's retention of Dr. McCrary to perform the examination in Plaintiff's claim, and then acceptance of his biased, one sided opinion that favored only U.S. Life, is an abuse of any discretion the Policy may have afforded it.

63.    Since April 2019, Dr. McCrary has been retained by the disability insurance industry to perform these alleged "independent" medical examinations in three (3) of undersigned counsel's other cases which are ***currently pending*** before this Court: *DeMarco v. Life Insurance Company of North America,* 2:19-cv-02385-DWL-PHX, *Jones v. Life Insurance Company of North America,* 2:19-cv-04669-DLR-PHX, *Hasslacher v. Life Insurance Company of North America,* 2:19-cv-05272-SMB-PHX.

64.    On June 4, 2019 and September 12, 2019, two (2) other disability clients of undersigned counsel were scheduled by their disability insurance company and/or their retained third-party vendor, to attend an alleged "independent" examination with Dr. McCrary.

65.    ***In 2019 alone, in less than six (6) months*** Plaintiff's counsel has had ***five (5)*** clients scheduled by their disability insurance company and/or their third-party vendor, to attend an examination with Dr. McCrary (*See* notices attached as Exhibit "C").

66.    Previous to the 2019 examinations referenced herein with Dr. McCrary, over a period of years, undersigned counsel has had other clients with disability claims and been aware of other individuals who were referred to Dr. McCrary for a medical examination where he authored a report and opinions which were adverse to the individual.

67.     Upon information and belief, Dr. McCrary is biased and operates under conflicts of interests due to the fact he is repeatedly retained by the disability insurance industry and companies like U.S. Life to perform these alleged "independent" medical examinations such as the one that Plaintiff attended with him.

68.     In Dr. McCrary's July 25, 2018 report, due to his aforementioned lack of medical expertise and qualifications to evaluate Plaintiff's disabling medical conditions, he *incorrectly* referred to her as having been diagnosed with a certain diagnosis, which actually had nothing to do with Plaintiff's primary disabling medical condition(s) and involved an entirely different system of her body.

69.     Dr. McCrary's failure to properly identify Plaintiff's diagnosis is evidence of his lack of medical expertise and qualifications to evaluate Plaintiff's disabling medical diagnoses, and is also palpable evidence of the superficial and cursory nature of his examination.

70.     Dr. McCrary's failure to understand the medical nature of one of Plaintiff's disabling diagnoses, is relevant evidence which in part explains why he was not of the opinion that Plaintiff's medical conditions caused her to need any work limitations and led to his biased conclusion that she was not disabled.

71.     Dr. McCrary's failure to understand the fundamental nature of Plaintiff's disabling medical diagnoses is evidence not only of his conflict(s) of interest, but his bias and desire to favor U.S. Life and its third-party vendor who retained him, rather than the Plaintiff.

72.     On July 30, 2018, U.S. Life provided Plaintiff's treating family medicine physician with a copy of Dr. McCrary's report for review and comment.

73.     Plaintiff's physician is the same one who had previously completed a medical questionnaire on June 14, 2018 and informed U.S. Life that Plaintiff was disabled and unable to work.

74.     In a medical questionnaire dated August 1, 2018, following her review of Dr. McCrary's report, Plaintiff's physician confirmed that, "I disagree with the Independent Examiner [Dr. McCrary] conclusions."

75.     Plaintiff's physician corrected Dr. McCrary's mis-diagnosis by informing U.S. Life of the same and she recommended, "correction of the patient's condition name."

76.     Upon information and belief, after U.S. Life obtained Plaintiff's physician's correction of Dr. McCrary mis-diagnosis, neither U.S. Life nor its third-party vendor who retained Dr. McCrary, D&D Medical Associates, PC, investigated Plaintiff's physician's statement about his mis-diagnosis.

77.     In a letter dated August 8, 2018, notwithstanding Plaintiff's evidence that clearly supported her claim and confirmed that nothing had improved or changed in her disabling medical conditions which would allow her to work, U.S. Life informed her it was terminating her LTD benefits effective August 7, 2018 after concluding, "the combined information in [her] file does not show that [she is] unable to perform the Material and Substantial duties of [her Regular Occupation] on a full time basis as of 8/8/2019…"

78.     Plaintiff alleges that U.S. Life's termination of her LTD claim and benefits after ***nothing improved or changed*** in her disabling medical conditions/symptoms/work limitations, since it previously concluded she was unable to work in her occupation for the entire STD timeframe (using *essentially the same definition of disability (See* Exhibit "B")*, and for seven (7) months thereafter in her LTD claim, is evidence of its conflict of interest at work, as is the rationale set forth in the denial letter which is unlawful, illogical, implausible and an abuse of discretion.

79.     Plaintiff alleges that U.S. Life's termination of her LTD claim and benefits when the LTD claim presents *significantly increased financial liability* for the company compared to her STD claim is relevant, palpable evidence of its financial conflict of interest at work and was a motivating factor in why it terminated Plaintiff's LTD claim.

80.    U.S. Life's denial of Plaintiff's LTD claim and termination of her benefits that she relied on and so desperately needs to survive, was motivated by its financial conflict of interest and its desire to save significant sums of money.

81.    Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed U.S. Life's August 8, 2018 termination of her LTD benefits.

82.    In support of her claim and appeal, Plaintiff submitted to U.S. Life additional reliable, credible, compelling medical and other evidence which supported her allegations that she is disabled and met the aforementioned definitions of disability set forth in the Policy.

83.    In support of her claim and appeal, Plaintiff submitted to U.S. Life an August 21, 2018 narrative letter authored by her board-certified treating pulmonologist who confirmed that due to Plaintiff's disabling diagnoses, "she suffers from incapacitating [symptoms which] includes debilitating fatigue, malaise and myofascial pain."

84.    Plaintiff also submitted to U.S. Life an August 24, 2018 narrative letter authored by another long-time treating physician who concluded, "This patient is currently at 'disabled' status and patient remains ordered on an 'off work duty status'…"

85.    As part of its review of Plaintiff's LTD claim, U.S. Life obtained a medical records only "paper review" (meaning he **_never_** spoke with, saw or physically examined Plaintiff) from a doctor that its third-party vendor chose, named Benton T. Ashlock, M.D.

86.    Benton T. Ashlock, M.D. was retained by U.S. Life through its third-party vendor named Exam Coordinators Network (hereinafter referred to as "ECN").

87.    ECN is a biased company who operated under a conflict of interest in Plaintiff's claim given its long, extensive business relationship and history of providing biased medical records reviews that favor disability insurance companies such as U.S. Life and which disfavor claimants, such occurred in Plaintiff's LTD claim.

88.    On similar facts as the instant case, the Court in *Hertz v. Hartford Life & Accident Ins. Co.*, 991 F. Supp 2d 1121, 1136 (D. Nev 2014), reversed the denial of an

ERISA disability claim made by a conflicted insurance company (like U.S. Life) after it reviewed discovery answers related to alleged conflicts of interest and bias involving the disability insurance company, its retained third-party vendor and the physician the vendor retained to review only Hertz's medical records (*See* Exhibit "D" for *Hertz* decision).

89.     Discovery responses in *Hertz* revealed that **95%** of the time in ERISA disability claims, the third-party vendor and its retained, alleged "independent" medical records reviewing doctor(s), had opined that a claimant was able to work and was not disabled.

90.     *Hertz* specifically referenced the third-party vendor and its retained doctor's conflicts of interests and bias in its Order:

> "Accordingly, **MLS** [i.e. third-party vendor] ***found that approximately 95% of all claimants could perform some type of work.***
>
> During that same time frame, Dr. Rim reviewed fourteen (14) claims for Hartford…Significantly, of those fourteen (14) claims reviewed, ***Dr. Rim did not find that a single claimant was completely unable to perform any type of work.***
>
> ***Accordingly, Dr. Rim found that 100% of all claimants could perform some type of work.***
>
> The Court finds these statistics strongly suggest that both MLS and Dr. Rim harbored a significant bias towards finding a claimant capable of performing some type of work. *See Montour*, 588 F.3d at 634 (noting relevance of statistics regarding Hartford's rate of claims denials or how frequently it contracts with the file reviewers it employed in that case to the issue of bias)." (emphasis added).

91.     Similar to Dr. Rim's involvement in *Hertz*, Plaintiff alleges Dr. Ashlock is not an "independent" medical reviewer as U.S. Life and ECN have alleged, but is instead like Dr. McCrary, a biased, long-time medical consultant who is repeatedly retained by ECN, and other third-party vendors, as well as other disability insurance companies, such as U.S. Life.

92.     Due to his long-time relationship with U.S. Life, ECN and/or the disability insurance industry, Dr. Ashlock is biased and operated under his own conflicts of interests.

93.    Dr. Ashlock's bias and conflicts of interest led to his selective, one sided and biased review of Plaintiff's evidence and is the reason he deliberately and blatantly de-emphasized and minimized her evidence of disability so he could, similar to Dr. McCrary, render an opinion favoring U.S. Life and the vendor who retained him, namely, that Plaintiff was not disabled.

94.    Dr. Ashlock's bias, conflicts of interest and relationships with the disability insurance industry, including the third-party vendor who retained him, are the reasons he ultimately rendered an adverse opinion in Plaintiff's claim that she was not disabled.

95.    Due to his bias and conflicts of interest, Dr. Ashlock has an incentive to protect his own consulting relationships with U.S. Life, ECN and/or the disability insurance industry by providing medical records only "paper reviews," where he selectively reviews, ignores, and de-emphasizes evidence that prove Plaintiff was disabled and entitled to benefits, all so he could provide opinions that favored U.S. Life so it could use his opinion to conclude Plaintiff was not disabled.

96.    U.S. Life's structural conflict of interest led it to unlawfully accept and use Dr. Ashlock's biased opinions that Plaintiff did not have work related restrictions so it could deny Plaintiff's claim for LTD benefits.

97.    In a letter dated October 17, 2018, U.S. Life informed Plaintiff it was denying the appeal of her claim for LTD benefits after using Dr. Ashlock's opinions to support its erroneous and unreasonable conclusion that, "…we find that you maintain the functional capability to perform the duties of your occupation as it falls into the sedentary physical demand category."

98.    U.S. Life's denial of Plaintiff's claim based on Dr. Ashlock's biased opinions as set forth in medical records only "paper review" is an abuse of discretion and an ERISA procedural violation because in accepting those opinions, it did not comply with ERISA which required it to afford her a "full and fair" review of her claim.

99.    In *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003), the Supreme Court warned about biased, conflicted insurance company retained doctors, such as Drs. Ashlock and McCrary, who are repeatedly retained by disability insurance companies and/or third-party vendors, such as ECN and D&D Medical Associates, PC, to review disability claims by noting, "Nor do we question the Court of Appeals' concern that physicians retained by benefits plans may have an 'incentive to make a finding of not disabled' in order to save their employers money and to preserve their own consulting arrangements."

100.    The biased, selective, cherry-picked and unfavorable review of Plaintiff's LTD claim by U.S. Life, Dr. Ashlock and Dr. McCrary ***directly resulted*** from their conflicts of interest as referenced herein, and those doctors' desire to protect their consulting arrangements and business relationships with ECN and D&D Medical Associates, PC, and with other third-party vendors, U.S. Life and the disability insurance industry.

101.    Prior to rendering its October 17, 2018 final denial in Plaintiff's LTD claim, U.S. Life unlawfully never disclosed or shared with Plaintiff, or her treating medical professionals (who had all examined/evaluated her personally and opined she was disabled and unable to work in any occupation), the medical records only "paper review" authored by Dr. Ashlock.

102.    U.S. Life's ERISA and Ninth Circuit ***duty*** to disclose Dr. Ashlock's report to Plaintiff and her treating medical professionals for their review and response was critical for to U.S. Life to provide her with a "full and fair" review.

103.    U.S. Life's ERISA and Ninth Circuit ***duty*** to disclose Dr. Ashlock's report to Plaintiff and her treating medical professionals for their review and response was critical for U.S. Life to engage her in the "meaningful dialogue" required to afford her with a "full and fair" review of her claim.

104.    U.S. Life's ERISA procedural violation of failing to disclose Dr. Ashlock's report and to engage Plaintiff in a meaningful dialogue, led to it not obtaining a complete and accurate picture of Plaintiff's disabling medical conditions, or her resulting symptoms and limitations which corroborate her credible allegations that she is unable to work in any occupation.

105.    An ERISA fiduciary complying with ERISA's regulations and the ***duties*** it owes Plaintiff under Ninth Circuit law, would have disclosed Dr. Ashlock's report to her and her treating medical professionals so they could respond and allow her to perfect the record so her LTD claim could have been approved rather than been denied.

106.    If U.S. Life had disclosed Dr. Ashlock's report to Plaintiff and her medical professionals, she would have been afforded an opportunity to participate in its review to perfect her claim, in doing so the company would have engaged her in the "meaningful dialogue" required by Ninth Circuit law and ERISA when it mattered – before U.S. Life rendered its final denial.

107.    If U.S. Life had engaged Plaintiff in any dialogue regarding the alleged deficiencies *it believed* existed in her claim before rendering its final denial, she and her treating medical professionals could have perfected the claim file (i.e. the record) as required by federal law so benefits could have continued rather then been terminated and later denied.

108.    As set forth by U.S. Life in its October 17, 2018 final denial, the reasons and deficiencies *it alleged* existed in Plaintiff's evidence/claim were not inconsequential *to U.S. Life,* they were the rationale and the basis for *why* it terminated and denied her LTD claim.

109.    U.S. Life's failure to provide Plaintiff and her treating and/or evaluating medical/vocational professionals with the opportunity to respond to its reviewing medical professional's report is an ERISA procedural violation, and precluded U.S. Life from providing Plaintiff with a "full and fair" review.  *See* 29 C.F.R. § 2560.503-1.

110.    U.S. Life's action in not providing Dr. Ashlock's report to Plaintiff is identical to the conflicted insurance company's claim tactics which were rejected in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, ***another for the final denial***. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer.  The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' ***A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement***" (bold and emphasis added).

111.    In a letter dated October 17, 2018, notwithstanding Plaintiff's aforementioned evidence which clearly proves she met and continues to meet both definitions of disability in the Policy, and that her medical conditions had not improved since U.S. Life found she was disabled on or about October 6, 2017, it notified her that had it rendered a final denial in her LTD claim.

112.    In its final denial dated October 17, 2018, U.S. Life notified Plaintiff she had exhausted all administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

113.    On September 5, 2019, after retaining undersigned counsel, Plaintiff requested for U.S. Life to re-open her LTD claim, and she submitted ***new and material*** medical and non-medical evidence which was not in claim file (i.e. Administrative Record) for its consideration in her LTD claim.

114.    The evidence submitted by Plaintiff with her September 5, 2019 letter should already ***all*** be in U.S. Life's Administrative Record (claim file), but for U.S. Life's failure to provide Plaintiff with a "full and fair" review as required by ERISA.

115.    The evidence submitted by Plaintiff with her September 5, 2019 letter should already ***all*** be in U.S. Life's claim file (i.e. Administrative Record), but for U.S. Life's failure to act as her ERISA fiduciary, as well as its failure to investigate and administer the claim "solely in her best interests" as required by 29 U.S.C. § 1104(a).

-18-

116.     In her September 5, 2019 letter, Plaintiff informed U.S. Life of the serious issues she had with Drs. McCrary and Ashlock's opinions/medical reports, which raised legitimate questions about those doctors' independence and bias as documented in their reports as referenced herein.

117.     In her September 5, 2019 letter, Plaintiff summarized for U.S. Life her compelling medical, vocational and lay-witness evidence which proved that Plaintiff has been disabled since October 6, 2017, as well as the fact that she remains "Disabled" as both terms are defined in the LTD Policy.

118.     In support of her claim, Plaintiff submitted a June 10, 2019 narrative letter from her long-time treating physician who after reviewing Dr. McCrary's report and Dr. Ashlock's medical records only "paper review," confirmed it was his opinion that, "…[Plaintiff] is physically unable to work in her previous occupation as an information and resource coordinator…Based upon [the Policy's] definition of disability for being unable to work in 'any gainful occupation' [Plaintiff] meets [the Policy's] defined criteria."

119.     In response to Dr. McCrary's report, the same referenced physician concluded that, "In Dr. McCrary's report there are questionable concerns…I raise question regarding the integrity of certain areas within Dr. McCrary's physical examination."

120.     In response to Dr. Ashlock's medical records only "paper review," the same physician concluded, "I disagree with Dr. Ashlock's restriction in limitations listed under question number 1 in his report…due to high pain level, significant limitations revealed on physical examination and documented findings, [Plaintiff] was physically incapable of performing duties as recommended by Dr. Ashlock."

121.     Plaintiff also submitted to U.S. Life a Functional Capacity Evaluation report dated March 29, 2019, wherein after an extensive four (4) hour clinical interview, physical examination and simulated objective workplace testing which produced ***valid*** test results, the qualified physical therapist concluded, "…it is my professional opinion that, to a reasonable

degree of medical probability, since at least October 6, 2017, [Plaintiff's] medical condition has continued to decline and her condition has worsened rendering her physically unable to perform her regular occupation as an Information Resource Coordinator or any work including a job description at the <u>sedentary work level</u> on a part-time or full-time basis." (Original emphasis).

122.    In response to Dr. McCrary's report, the physical therapist concluded, "It is unclear how Dr. McCrary determined the subject's functional abilities as listed in his report…but one thing is certain, his evaluation of [Plaintiff's] functional abilities is NOT based on any objective data." (Original emphasis).

123.    In response to Dr. Ashlock's opinions as set forth in his medical records only "paper review," the physical therapist stated, "Dr. Ashlock's opinions and response to questions #1 on page 4 to 6 regard [Plaintiff's] residual functional capacity are highly speculative and simply a guess and defy common sense."

124.    Further supporting her claim, Plaintiff submitted a Vocational Assessment (evaluation) dated July 22, 2019 from a certified vocational expert, who after personally interviewing Plaintiff and reviewing the relevant evidence in Plaintiff's claim, along with the "Regular Occupation" and "Any Gainful Occupation" definitions of disability set forth in the Policy, concluded, "…it is clearly evident that [Plaintiff's] medical conditions and overall ability to work medically and vocationally in her regular occupation and in any gainful occupation has only deteriorated since she last worked on October 6, 2017."

125.    Plaintiff also submitted to U.S. Life updated medical records from each of her treating medical professionals.

126.    Plaintiff also submitted to U.S. Life a list of her current medications, as well as the adverse side effects those medications cause her to experience and how those side effects preclude her from being able to sustain work in any occupation.

127.    Plaintiff also submitted to U.S. Life a June 4, 2019 sworn affidavit she authored wherein she confirmed that she remained unable to work in any occupation and had been disabled due to her disabling medical conditions since she last worked on October 6, 2017.

128.    Plaintiff confirmed in her affidavit that her medical conditions and resulting disabling symptoms and limitations had not improved in any manner that would have allowed her to return to any type of work or occupation since she last worked on October 6, 2017.

129.    In her June 4, 2019 affidavit, Plaintiff confirmed that Dr. McCrary's physical examination of her lasted a total of ***five (5) minutes.***

130.    In her June 4, 2019 affidavit, Plaintiff confirmed that the ***total time*** Dr. McCrary amount of time he spent with her was only ***twenty (20) minutes.***

131.    In her September 5, 2019 letter to U.S. Life, Plaintiff informed it that Dr. McCrary is repeatedly retained by the disability insurance industry to perform the sort of alleged "independent" examination he was retained to perform in Plaintiff's claim.

132.    In her September 5, 2019 letter, Plaintiff informed U.S. Life that Dr. McCrary's extensive relationship with the disability insurance industry, including with U.S. Life, resulted in his extreme bias in favor of U.S. Life and against disabled individuals such as the Plaintiff.

133.    To provide U.S. Life with evidence to support her allegations regarding Dr. McCrary's bias and his extensive relationship with the disability insurance industry, and that he is repeatedly retained to perform these alleged "independent" medical examinations, she submitted to U.S. Life four (4) notices of examinations that undersigned counsel's clients received in 2019 to attend the same examination with Dr. McCrary over a period of only five (5) months.  (*See* notices attached as Exhibit "C").

134.    Following Plaintiff's submission of the four (4) 2019 examination notices his clients had received to attend an examination with Dr. McCrary, Plaintiff asked U.S. Life to investigate the issues she raised with Dr. McCrary's independence, bias and conflicts of interest.

-21-

135.   U.S. Life took no action to investigate Dr. McCrary's bias and conflicts of interest.

136.   U.S. Life took no action to investigate Dr. McCrary's lack of medical expertise, and lack of medical credentials and qualifications to examine her and render opinions in Plaintiff's disability claim.

137.   All of the reliable evidence Plaintiff submitted to U.S. Life consistently proved that she is unable to work in *any occupation,* and that she meets both definitions of disability set forth in its LTD Policy.

138.   In a letter dated September 12, 2019, in spite of Plaintiff's request(s) that it re-open her disability claim, U.S. Life informed her that its October 17, 2018 decision was final and "the additional information submitted will not be reviewed by [U.S. Life]."

139.   In a letter dated October 21, 2019, Plaintiff again requested for U.S. Life to re-open her claim and reminded it of its fiduciary duty to do so pursuant to 29 U.S.C. § 1104(a)(1), as well as *Metro. Life Ins. Co., v. Glenn,* 554 U.S. 105, 115 (2008) which holds U.S. Life to a high standard in the administration of her claim:

> ERISA imposes higher-than-marketplace quality on standards on insureds. It sets forth a special standard of care upon a plan administrator, namely, that the administrator ***"discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries"*** of the plan, § 1104(a)(1)…(emphasis added).

140.   In Plaintiff's October 21, 2019 letter, she advised U.S. Life that upon review of her LTD claim file it provided to her, it was blatantly clear that U.S. Life made its decision to terminate her claim and benefits based on a thoroughly incomplete record (i.e. claim file), as medical records and other evidence U.S. Life failed to obtain which were ***critical*** to proving that Plaintiff was disabled, were missing and not reviewed by U.S. Life.

141.   The fact that critical records were missing from Plaintiff's claim file when U.S. Life made its final decision is also confirmatory evidence that it did ***not provide*** Dr. McCrary

or its medical records only "paper reviewing" doctor, Dr. Ashlock, with all of Plaintiff's relevant medical records and other evidence.

142.    After being notified of Plaintiff's incomplete claim file, U.S. Life's subsequent failure to re-open her claim so it could review Plaintiff's evidence (and if necessary, any other necessary evidence) violates its ERISA and Ninth Circuit ***duties*** to investigate and engage her in a "meaningful dialogue" so U.S. Life could afford her with an opportunity to perfect her claim so it could be approved.

143.    U.S. Life never had a medical or vocational consultant review any of the evidence she submitted during with her requests that it re-open her claim.

144.    U.S. Life's failure to re-open Plaintiff's claim and engage her in any "meaningful dialogue" after being notified of the ERISA procedural violations it committed during its review, precluded her from knowing that critical records were actually missing from the claim file (i.e. Administrative Record) and these are records which were critical for U.S. Life to evaluate to determine whether she met the definition of disability in its LTD Policy.

145.    U.S. Life's failure to re-open Plaintiff's claim so it could admit her evidence to its claim file and consider the evidence she submitted following its final denial, is a failure to investigate her claim and a failure to engage her in the "meaningful dialogue" required by *Montour v. Hartford Life & Accident Ins. Co.* 582 F.3d 933 (9th Cir. 2009) and *Salomaa*.

146.    In a letter dated November 15, 2019, U.S. Life again refused Plaintiff's request that it re-open her claim so it could consider the evidence she submitted to it that ***should have already been in*** her claim file (i.e. the Administrative Record) and been reviewed by it, but for its failure to comply with ERISA, by stating, "…no additional review will be conducted on [Plaintiff's] claim as a final appeal decision has been rendered."

147.    In a letter dated January 9, 2020, Plaintiff requested for a third time that U.S. Life act as her ERISA fiduciary by re-opening her LTD claim so it could admit and consider

this evidence along with the evidence had has requested for it to submit in her letters dated September 5, 2019 and October 21, 2019.

148.    In her January 9, 2020 letter, Plaintiff also requested for U.S. Life to consider the documents contained in her STD claim file, which as referenced above, was administered and fully approved by U.S. Life.

149.    Plaintiff submitted to U.S. Life a complete copy of her STD claim file and informed U.S. Life that nothing had improved or changed with her disabling medical conditions since it previously concluded she was unable to work in her occupation for the entire STD timeframe (using a *similar definition of disability),* and for seven (7) months additional thereafter in her LTD claim.

150.    In a letter dated January 16, 2020, in spite of its ERISA fiduciary duty to the Plaintiff, U.S. Life informed her that, "…our position has not changed and any further attempts to appeal this decision will not be responded to."

151.    U.S. Life's October 17, 2018 final denial, and its September 12, 2019, November 15, 2019 and January 16, 2020 letters are clear evidence that it willfully breached its fiduciary duty to Plaintiff by failing to administer the claim in her best interests, and that it failed to investigate, failed to engage her in any dialogue, and deliberately failed to afford her with a "full and fair review" as required by ERISA.  *See* 29 C.F.R. § 2560.503-1.

152.    U.S. Life's failure to re-open Plaintiff's claim after her ***three requests*** so it could consider critical evidence she submitted, and that she asked for it to admit to the claim file (i.e. Administrative Record), is palpable evidence of its structural conflict of interest and desire to save money by not paying Plaintiff the benefits she is owed.

153.    U.S. Life's failure to re-open Plaintiff's claim and to review the evidence she submitted is an abuse of any discretion the LTD Policy may have afforded it.

154.    Plaintiff request for U.S. Life to re-open her LTD claim so it could consider al the evidence she submitted was her effort to "re-create" the claim file (i.e. Administrative

Record) and the administrative review process as "it should have been" had U.S. Life had not violated ERISA.

155.    The evidence Plaintiff submitted to U.S. Life with her aforementioned letters asking it to re-open her claim, should be part of the Administrative Record and considered by this Court in its determination regarding whether Plaintiff meets any or both definitions of disability as set forth in the LTD Policy.

156.    Plaintiff requests for the Court to admit and consider all the evidence in her claim file (i.e. Administrative Record), and the evidence she submitted to U.S. Life following its final denial pursuant to ERISA and *Abatie*, 458 F.3d at 973, which allows her to engage in this process in an effort to obtain a "full and fair" review and in the process, to remedy U.S. Life's ERISA procedural violations:

> Even when procedural irregularities are smaller, though, and abuse of discretion review applies, the court may take additional evidence when the irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct.

157.    During its review which led to its termination of Plaintiff's claim and the denial of her appeal, U.S. Life negligently and intentionally committed numerous ERISA procedural violations identified herein that allowed it to unlawfully and unreasonably terminate Plaintiff's LTD claim and benefits.

158.    Throughout the entirety of Plaintiff's claim and prior to the date she filed this Complaint, U.S. Life's ERISA procedural violations include, but are not limited to the following:  completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing all of Plaintiff's reliable evidence which proves she met the "Regular Occupation" and "Any Gainful Occupation" definitions of disability in the LTD Policy and that she is entitled to benefits.

159.    In evaluating Plaintiff's claim, U.S. Life owed her a fiduciary duty and had an obligation pursuant to ERISA to administer her claim "solely in [her] best interests and other participants" which it egregiously failed to do. [1]

160.    Due to all the aforementioned conflicts of interest and bias referenced *supra*, which Plaintiff alleges not only influenced, but also resulted in the termination of her claim, U.S. Life violated ERISA and its fiduciary duty to her because it unlawfully and unreasonably administered the claim "solely" in U.S. Life's best interests.

161.    Throughout the entirety of Plaintiff's claim which includes prior to the date she filed this Complaint, U.S. Life's failure to investigate the claim and to her engage in any dialogue, and failure to ask for and/or obtain the evidence it believed was necessary and critical to cure any deficiencies *it believed existed* so Plaintiff could perfect to have it approved is particularly egregious given the nature and severity of her disabling medical conditions that include objective findings and subjective disabling complaints which prove she continues to be disabled as those terms are defined in the LTD Policy.

162.    Plaintiff alleges U.S. Life's review was neither full nor fair and violated ERISA, specifically, 29 U.S.C. § 2560.503-1, for many reasons including, but not limited to: failing to act as Plaintiff's ERISA fiduciary by re-opening Plaintiff's claim so it could consider the evidence it failed to obtain and review prior to its final denial; failing to admit and/or review the evidence Plaintiff submitted following its final denial; failing to obtain all of Plaintiff's critical medical records; by abdicating and outsourcing its ERISA fiduciary

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

duty when U.S. Life retained biased third-party vendors/companies (ECN and D&D Medical Associates, PC) to be involved in the review of Plaintiff's claim; by failing to retain a qualified and unbiased medical professional to conduct an examination of the Plaintiff (Dr. McCrary); failing to credit Plaintiff's credible, reliable evidence; by abdicating and outsourcing its ERISA fiduciary duty when U.S. Life retained a biased third-party vendor/company (D&D Medical Associates, PC) who in turn retain a biased medical consultant (Dr. McCrary) to examine Plaintiff and render opinions in her claim; by abdicating and outsourcing its ERISA fiduciary duty when U.S. Life retained a biased third-party vendor/company (ECN) who in turn retain a biased medical consultant (Dr. Ashlock) to review and render opinions in Plaintiff's claim; by failing to have Plaintiff's claim reviewed by truly independent third-party vendors and medical consultants; by de-emphasizing, cherry picking and selectively reviewing Plaintiff's evidence in an effort to deny her claim when all her evidence proves she met and continues to meet both the "Regular Occupation" and "Any Gainful Occupation" definitions of disability in the Policy; by providing a biased and one sided review of Plaintiff's claim that failed to consider all of the evidence submitted by her and/or by de-emphasizing medical and other evidence which supported Plaintiff's claim and its approval; by disregarding and/or failing to consider Plaintiff's disabling subjective and self-reported complaints/symptoms and limitations; by failing to consider the *combined and aggregate effect* that all of her medical conditions and resulting disabling limitations documented in her evidence had on her ability to work in any occupation as that term is defined in the LTD Policy; by failing to engage Plaintiff in a "meaningful dialogue" so she and her treating and/or evaluating medical/vocational professionals could respond to U.S. Life's reviewing medical consultant/professional's (Dr. Ashlock) report; by precluding Plaintiff from being able to submit the necessary evidence to perfect her claim so it could be approved; and by failing to consider the adverse impact the side effects Plaintiff's medications

have, and have had, on her ability to engage in her regular and any occupation as those terms are defined in LTD Policy.

163.    Plaintiff alleges one reason U.S. Life provided an unlawful review that was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest which manifested due to its roles as the decision maker and payor of benefits.

164.    U.S. Life's conflict of interest provided it with a financial incentive to terminate and then deny Plaintiff's LTD claim, because every dollar it saved by not paying Plaintiff the disability benefits she is entitled to now represents monetary profit for U.S. Life.

165.    U.S. Life's self-serving actions are similar to the conflicted and unlawful review by another conflicted insurance company in *Salomaa* where the Court referenced the insidious and pervasive nature of these conflicts by noting, "The plan with a conflict of interests also has a financial incentive to cheat."

166.    U.S. Life's unlawful review and dishonest failure to re-open Plaintiff's claim when Plaintiff had notified it of the litany of ERISA procedural violations it committed throughout the entirety of its review of her claim and before she filed this Complaint, has cheated her out of the disability benefits she is entitled to just as much as the insurance company cheated Mr. Salomaa out of his disability benefits.

167.    Regardless of the standard of review the Court applies, discretionary or *de novo*, Plaintiff is entitled to discovery regarding U.S. Life's aforementioned conflicts of interest, its bias and business relationships referenced herein, as well as the conflicts of interest of any of its third-party vendors (including but not limited to ECN and D&D Medical Associates, PC) hired by U.S. Life and any medical professional (including but not limited to Drs. McCrary and Ashlock) employed by and/or retained by U.S. Life or its third-party vendors to examine Plaintiff and/or review her claim.

168.    Regardless of the standard of review, discretionary or *de novo*, Plaintiff is entitled to discovery regarding the conflicts of interest of *any* individual, medical professional or otherwise, who was involved in and/or participated in the review and administration of her claim.

169.    Regardless of the standard of review, the Court should allow discovery so it can properly weigh and consider the nature, extent and effect that *any conflict of interest* and/or any ERISA procedural violation had in influencing and leading to U.S. Life's decision to terminate and then later deny Plaintiff's LTD claim.

170.    Plaintiff asserts that any third-party vendor (including but not limited to ECN and D&D Medical Associates, PC) retained by U.S. Life, and in turn, any medical professional any of those vendors hired to review evidence in Plaintiff's claim and/or examine her, operated under a conflict of interest due to their extensive business relationship with U.S. Life and the disability insurance industry in general.

171.    U.S. Life's third-party vendors and its reviewing and examining medical professionals' (Drs. McCrary and Ashlock) conflicts of interest as referenced herein, tainted their opinions and resulted in their biased, adverse opinions against Plaintiff which formed the basis of U.S. Life's unlawful and unreasonable decision to deny her claim.

172.    Even if U.S. Life's Policy contains discretionary language, the standard of review should be *de novo* because U.S. Life's numerous ERISA procedural and other violations as set forth herein are so egregious that they warrant *de novo* review.

173.    Regardless of the standard of review, Plaintiff is entitled to discovery regarding U.S. Life's conflicts of interest/bias, the conflicts of interest/bias of U.S. Life's retained third-party vendors (i.e. ECN and D&D Medical Associates, PC), the conflicts of interest/bias of any individual who was involved in the review of Plaintiff's claim or the examination of Plaintiff (i.e. Drs. McCrary and Ashlock) who may have influenced U.S. Life's decision to terminate and later deny Plaintiff's LTD claim.

174.    As a direct result of U.S. Life's decision to terminate, and later deny Plaintiff's disability claim, she has been substantially injured and suffered damages in the form of lost LTD benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from U.S. Life, the Plan, from any other Company Plan and/or the Company as a result of being found disabled in this matter.

175.    Upon information and belief, Plaintiff alleges other potential non-disability employee benefits may include but not be limited to, health insurance benefits and coverage, and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and the waiver of any premium(s) due on a life insurance policy which may provide coverage for her and her family/dependents.

176.    Plaintiff seeks any and all employee benefits, including but not limited to disability benefits and any other benefits she may be entitled to and due from the Defendants as a result of being found disabled in this matter.

177.    Pursuant to 29 U.S.C. § 1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

178.    Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. § 20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For an Order admitting/supplementing the evidence Plaintiff submitted to U.S. Life following its final denial into the claim file (i.e. Administrative Record);

B.    For an Order finding that the evidence in Plaintiff's claim file (i.e. Administrative Record) is sufficient to prove that she met and continues to meet the "Regular Occupation" definition of disability set forth in the relevant Plan and/or Policy, and she is entitled to those disability benefits, and any other non-disability employee benefits as a result

of the Order, from the date she was first entitled to these benefits but denied them, through the date of judgment with prejudgment interest thereon;

C.      For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

D.      Assuming the issue is ripe before the Court (i.e. the Policy's 24 month "Regular Occupation" definition of disability timeframe has expired), Plaintiff seeks an Order finding that the evidence in Plaintiff's claim file (i.e. Administrative Record) is sufficient to prove that she is disabled and meets the "Any Gainful Occupation" definition of disability set forth in the relevant Plan and/or Policy, and she is entitled to these LTD benefits from the date she was first eligible for them through the date of the Order with pre-judgment interest thereon;

E.      Assuming the issue is ripe before the Court and the Court issues an Order finding that Plaintiff meets the "Any Gainful Occupation" definition of disability in the Plan and/or Policy, she seeks an Order that Defendants must continue paying these LTD benefits and any other non-disability employee benefits she is entitled to as a result of that Order, until such a time as she meets the conditions for the termination of these benefits;

F.      Alternatively, if the Court determines that the evidence in Plaintiff's claim file (i.e. Administrative Record) is sufficient to prove that Plaintiff met the "Regular Occupation" definition of disability in the Plan and/or the Policy for the entire duration of that definition of disability's timeframe, but is unable to make an "Any Gainful Occupation" determination for any reason, she then seeks an Order remanding her claim to U.S. Life to include Ordering that all of the evidence Plaintiff submitted to U.S. Life is admitted to the claim file (i.e. Administrative Record), and U.S. Life must consider this evidence in its review to determine whether she meets the "Any Gainful Occupation" definition of disability in the Plan and/or Policy and is entitled to those benefits;

G.     In the event the Court is unable to render a decision as to whether Plaintiff is entitled to any LTD benefits from U.S. Life for any reason, or in the event the Court determines that U.S. Life should re-open her claim and consider the evidence Plaintiff submitted following U.S. Life's final denial, in addition to the evidence that was in her claim file on the day of its final denial, she seeks an Order remanding her claim to U.S. Life for it to admit all of Plaintiff's evidence to the claim file (i.e. Administrative Record) as part of its determination as to whether she meets the relevant definition of disability and is entitled to benefits in a matter consistent with the Order;

H.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

I.     For such other and further relief as the Court deems just and proper.

DATED this 28th day of January, 2020.

SCOTT E. DAVIS. P.C.


By:     /s/ Scott E. Davis
        Scott E. Davis
        Attorney for Plaintiff

-32-